**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEANNE R. JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 11-688** |
| | ) | **Electronic Filing** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

**I.      INTRODUCTION**

Plaintiff Deanne R. Jones ("Jones") brings this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying her application for disability insurance benefits under Title II of the

Social Security Act ("Act") [42 U.S.C. §§ 401-433].  The parties have filed cross-motions for

summary judgment pursuant to Federal Rule of Civil Procedure 56, and the record has been

developed at the administrative level.  For the reasons that follow, the motion for summary

judgment filed by the Commissioner (*ECF No. 7*) will be denied, and the motion for summary

judgment filed by Jones (*ECF No. 5*) will be denied to the extent that it requests an award of

benefits but granted to the extent that it seeks a vacation of the Commissioner's administrative

decision, and a remand for further proceedings.  The decision of the Commissioner will be

vacated, and the case will be remanded to him for further consideration of Jones' application for disability insurance benefits.[1]

## II.      PROCEDURAL HISTORY

Jones protectively applied for disability insurance benefits on April 24, 2008, alleging that she had become "disabled" on July 2, 2007.  R. 103, 140, 184.  The application was administratively denied on August 1, 2008.  R. 60.  Jones responded on September 29, 2008, by filing a timely request for an administrative hearing.  R. 67-68.  On November 18, 2009, a hearing was held before Administrative Law Judge ("ALJ") Richard D. Brady.[2]  R. 24.  Jones appeared and testified at the hearing.  R. 28-49.  She was assisted by a lay representative.[3]  R. 10, 26.  James Ganoe ("Ganoe"), an impartial vocational expert, also testified at the hearing.  R. 49-53.  In a decision dated December 17, 2009, the ALJ determined that Jones was not "disabled" within the meaning of the Act.  R. 7-20.

On January 28, 2010, Jones sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council.  R. 5.  The Appeals Council denied the request for review on March 23, 2011, thereby making the ALJ's decision the final decision of the Commissioner in this case.  R. 1.  Jones commenced this action on May 23, 2011, seeking judicial review of the Commissioner's decision.  ECF No. 1.  Jones and the Commissioner filed motions for summary judgment on September 12, 2011, and October 12, 2011, respectively.  ECF Nos. 5 & 7.  These motions are the subject of this memorandum opinion.

---

[1] The applicable statutory provision provides the Court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

[2] It is not clear from the record whether the hearing was held in Morgantown, West Virginia, or somewhere in Pennsylvania.  R. 10, 24.

[3] The Act permits representatives who are not licensed attorneys to represent claimants during administrative proceedings conducted before the Commissioner.  42 U.S.C. § 406(a)(1).

III.    STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental

3

impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether

> the claimant is capable of performing other jobs existing in significant numbers in
> the national economy.  §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes

omitted).  Factual findings pertaining to all steps of the sequential evaluation process are subject

to judicial review under the "substantial evidence" standard.  *McCrea v. Commissioner of Social*

*Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's

decision cannot be affirmed on a ground other than that actually relied upon by the agency in

making its decision.  In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67

S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of
> administrative law.  That rule is to the effect that a reviewing court, in dealing
> with a determination or judgment which an administrative agency alone is
> authorized to make, must judge the propriety of such action solely by the grounds
> invoked by the agency.  If those grounds are inadequate or improper, the court is
> powerless to affirm the administrative action by substituting what it considers to
> be a more adequate or proper basis.  To do so would propel the court into the
> domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.  The United States Court of Appeals for the Third Circuit has

recognized the applicability of this rule in the Social Security disability context.  *Fargnoli v.*

*Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001).  Thus, the Court's review is limited to the four

corners of the ALJ's decision.  *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV.   THE ALJ'S DECISION

In his decision, the ALJ determined that Jones had not engaged in substantial gainful

activity subsequent to her alleged onset date.  R. 12.  Jones was found to be suffering from

absence seizures, headaches and major depressive disorder.  R. 12.  These impairments were

deemed to be "severe" under the Commissioner's regulations.  R. 12; 20 C.F.R. §§

5

404.1520(a)(4)(ii), 404.1520(c).  The ALJ concluded that Jones' impairments did not meet or

medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing

of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing").  R.

12-15.

In accordance with 20 C.F.R. § 404.1545, the ALJ assessed Jones' "residual functional

capacity"[4] as follows:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform a range of light work;
> cannot climb ropes, ladders, or scaffolds; cannot balance on uneven or moving
> surfaces where there is a risk of falling; cannot be exposed to hazards, including
> dangerous moving machinery, unprotected heights, or driving or operating
> automotive equipment; cannot perform jobs requiring exposure to dangerous
> situations if the individual was momentarily, five to ten seconds, unable to
> function or respond to what is going on around her; and can perform no fast
> production rate pace work.

R. 15.  Jones had "past relevant work"[5] experience as a customer service representative, cashier,

pharmacy technician and manager.  R. 51.  Ganoe classified Jones' customer service

representative, cashier and pharmacy technician positions as "semi-skilled"[6] jobs at the "light"[7]

---

[4] The term "residual functional capacity" is defined as "that which an individual is still able to do
despite the limitations caused by his or her impairments."  *Hartranft v. Apfel*, 181 F.3d 358, 359,
n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a).  The same residual
functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation
process.  20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).
[5] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within
the last fifteen years that lasted long enough for him or her to learn how to do it.  20 C.F.R. §§
404.1560(b)(1), 416.960(b)(1).  The Commissioner has promulgated comprehensive regulations
governing the determination as to whether a claimant's work activity constitutes "substantial
gainful activity."  20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.
[6] "Semi-skilled work is work which needs some skills but does not require doing the more
complex work duties.  Semi-skilled jobs may require alertness and close attention to watching
machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or
guarding equipment, property, materials, or persons against loss, damage or injury; or other types
of activities which are similarly less complex than skilled work, but more complex than unskilled
work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as

level of exertion.  R. 51.  Although her managerial position was also within the "light" exertional

category, Ganoe classified it as a "skilled"[8] job.  R. 51.  When presented with a hypothetical

question describing an individual with Jones' limitations, Ganoe testified that such an individual

could not perform the duties of Jones' prior managerial position, since it had involved exposure

to workplace hazards.  R. 52.  Nonetheless, he stated that an individual with the limitations

described by the ALJ could work as a customer service representative, cashier or pharmacy

technician.  R. 52.  Relying on Ganoe's testimony, the ALJ determined that Jones could return to

her past relevant work.  R. 19-20.

## V.      VOCATIONAL FACTORS

Jones was born on August 20, 1974, making her thirty-two years old on her alleged onset

date and thirty-five years old on the date of the ALJ's decision.  R. 29.  She was classified as a

"younger person" under the Commissioner's regulations.  20 C.F.R. § 404.1563(c).  She had a

college education and an ability to communicate in English.  R. 29, 143, 149; 20 C.F.R. §

404.1564(b)(4)-(5).

## VI.     MEDICAL EVIDENCE

---

when hands or feet must be moved quickly to do repetitive tasks."  20 C.F.R. §§ 404.1568(b),
416.968(b).

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying
of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in
this category when it requires a good deal of walking or standing, or when it involves sitting
most of the time with some pushing and pulling of arm or leg controls.  To be considered capable
of performing a full or wide range of light work, [a claimant] must have the ability to do
substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).

[8] "Skilled work requires qualifications in which a person uses judgment to determine the machine
and manual operations to be performed in order to obtain the proper form, quality, or quantity of
material to be produced.  Skilled work may require laying out work, estimating quality,
determining the suitability and needed quantities of materials, making precise measurements,
reading blueprints or other specifications, or making necessary computations or mechanical
adjustments to control or regulate the work.  Other skilled jobs may require dealing with people,
facts, or figures or abstract ideas at a high level of complexity."  20 C.F.R. §§ 404.1568(c),
416.968(c).

When Jones was a child, she fell from a "monkey bar" and injured her head.  R. 229.  She was thirteen years old at the time of this incident.  R. 36, 236, 250.  After hitting her head, Jones lost consciousness and was diagnosed with a concussion.  R. 229.  Although objective testing revealed the existence of no abnormalities, Jones began to experience "staring spells" a few years later.  It was ultimately determined that she was suffering from petit mal seizures.  R. 229.  Depakote was prescribed to control her symptoms.  R. 229.  In 1993, Jones had a "generalized tonic/clonic seizure" after missing multiple doses of Depakote.  R. 229.  That apparently occurred when she was in college.  R. 229.

Jones continued to take Depakote when she was pregnant with her first child.  R. 200.  When she was pregnant with her second child, however, Jones was noncompliant with her medication regimen.  R. 200.  Her second child was delivered at Allegheny General Hospital on January 21, 2008, by means of a Caesarian section.  R. 194-196.

On April 2, 2008, Jones told Dr. Theresa J. LaCava that she had been experiencing stomach pain after eating.  R. 206.  Jones further complained of seizure activity when she was under stress and unable to sleep.  R. 207.  She returned to Dr. LaCava's office on May 9, 2008, complaining of burning and pressure sensations while urinating.  R. 202.  Dr. LaCava determined that Jones was suffering from cystitis and advised her to reduce her consumption of carbonated soft drinks.  R. 203-204.

Jones was involved in a motor vehicle accident on December 29, 2008.  R. 240-241.  Her vehicle was hit on the driver's side while she was holding onto the steering wheel.  R. 241.  In the aftermath of the accident, Jones experienced sharp pain in her right shoulder.  R. 241.  A radiograph of her shoulder yielded normal results.  R. 243.  An arthrogram performed on

February 24, 2009, revealed that Jones had not torn her rotator cuff.  R. 244.  It was determined that she was suffering from tendonitis and bursitis.  R. 244.

Dr. Renu K. Pokharna, a neurologist, examined Jones on January 23, 2009.  R. 229-231.  Jones complained of headaches on the left side of her head with nausea and occasional vomiting.  R. 229.  She stated that headaches had been occurring at the frequency of four times per week.  R. 229.  Dr. Pokharna adjusted Jones' medication regimen in order to alleviate the problem.  R. 230.  Jones was instructed to keep track of her headaches and seizures in a diary for diagnostic purposes.  R. 230.

Jones was evaluated by Janice Colosimo ("Colosimo"), a mental health therapist, on August 27, 2009.  R. 235-237.  According to Colosimo, Jones claimed that her seizures had been caused by stress and a lack of sleep.  R. 235.  Jones also described experiences in which she had heard "someone calling her name" or seen "someone behind her."  R. 235.  She expressed an unfounded fear that she would die at the age of forty-four.  R. 235.  On September 17, 2009, certified registered nurse practitioner ("CRNP") Barbara Bodura ("Bodura") found Jones to be anxious and depressed.  R. 233.  During a therapy session conducted on September 22, 2009, Jones' mother told Colosimo that Jones had been "hearing voices in the wall."  R. 232.

Dr. Tatyana P. Barsouk, a neurologist, evaluated Jones on September 24, 2009.  R. 250-251.  Jones stated that she had been experiencing "absence seizures" "almost on a daily basis."  R. 250.  She also mentioned that seizures and headaches sometimes occurred when she was "stressed out."  R. 250.  Dr. Barsouk noted that Jones' Depakote had resulted in various side effects.  R. 250-251.  These side effects included memory loss, weight gain, skin reactions and mood fluctuations.  R. 251.  Topamax was prescribed to control Jones' symptoms.  R. 251.  Dr. Barsouk observed that if Jones was able to tolerate Topamax, the dosage of her Depakote could

be lowered at a later date.  R. 251.  It was further noted that Jones' seizures had rendered her unable to drive.  R. 251.

Jones returned to Dr. Barsouk's office on October 15, 2009.  R. 249.  By that time, Jones was having only three to four petit mal seizures per week.  R. 249.  The dosage of her Topamax was increased.  R. 249.  Dr. Barsouk observed that if the Topamax were to render Jones "completely asymptomatic," she could try to wean Jones off of Depakote.  R. 249.  Jones promised Dr. Barsouk that she would not try to drive until her seizures were "under control."  R. 249.

## VII.   DISCUSSION

The record contains a limited amount of evidence concerning Jones' ability to engage in work-related activities.  Dr. Mary Ellen Wyszomierski, a non-examining medical consultant, opined on July 24, 2008, that Jones could perform a range of "medium"[9] work activities that did not involve even moderate exposure to hazardous machinery or heights.  R. 220-226.  On October 15, 2009, Dr. Barsouk described the impact of Jones' seizures in response to a questionnaire based on the requirements of Listings 11.02 and 11.03.  R. 239.  Dr. Oscar Urrea, a treating psychiatrist, detailed Jones' mental limitations on November 2, 2009.  R. 245-248.  He reported that Jones was "seriously limited" in a number of areas, and that her abilities to deal with normal work-related stress and complete a normal workday or workweek were below the expectations of ordinary "competitive standards."  R. 247-248.  Dr. Urrea indicated that Jones' impairments would necessitate her absence from work more than four times per month if she were to acquire a full-time job, and that her medical condition was expected to last for more than twelve months.  R. 248.

---

[9] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

Ganoe testified that an individual who needed to miss work more than two days per month would be unable to maintain a full-time job.  R. 52-53.  Consequently, a decision to credit Dr. Urrea's assessment would have compelled a finding that Jones was disabled.  At the hearing, Jones explained that she had first sought treatment from Dr. Urrea in August 2009, and that she had only seen him on two occasions.  R. 53.  The ALJ rejected Dr. Urrea's opinion because it was not based on a long treating relationship.  R. 19.  Although Dr. Wyszomierski indicated that Jones could perform medium work, the ALJ ultimately determined that she was limited to light work.  R. 19.  This finding was based on a concern that Jones might drop heavy objects during the course of a seizure.  R. 51-52.

Jones advances two arguments in support of her motion for summary judgment.  First, she contends that the ALJ erred in rejecting Dr. Urrea's assessment of her work-related abilities and limitations.  ECF No. 6 at 4-9.  Second, she maintains that her mental limitations were not reflected in the ALJ's residual functional capacity assessment and corresponding hypothetical question to Ganoe.  *Id.* at 9-11.  These issues will be addressed in sequential order.

The Commissioner argues that "Dr. Urrea was not a treating physician when he rendered his opinion."  ECF No. 8 at 9.  This argument is based on the relatively short duration of Dr. Urrea's treating relationship with Jones.  It is true that the extent and duration of a treating relationship may have a significant impact on the *weight* that should be given to a treating physician's opinion.  20 C.F.R. § 404.1527(d)(2)(i).  It does not follow, however, that the extent and duration of a treating relationship determine *whether* a physician qualifies as a treating physician in the first place.  Jones testified that Dr. Urrea had given her a prescription for Lexapro.  R. 53.  Since Dr. Urrea took actions designed to *treat* Jones' medical problems, he qualified as a "treating physician" for purposes of the ALJ's analysis.  *Mason v. Shalala*, 994

F.2d 1058, 1061-1062, 1067 (3d Cir. 1993)(explaining that two physicians who had examined a claimant solely for the purpose of evaluating his entitlement to benefits under the Act did not qualify as "treating physicians").

Under the Commissioner's regulations, the opinion of a treating physician is entitled to "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(d)(2).  Because Dr. Urrea's assessment was not accompanied by documentation substantiating the severity of Jones' limitations, the Commissioner correctly points out that it was not entitled to "controlling weight."  ECF No. 8 at 9-10.  Nonetheless, the mere fact that Dr. Urrea's opinion was not entitled to "controlling weight" does not mean that it was entitled to "no weight whatsoever."  *Gonzalez v. Astrue*, 537 F.Supp.2d 644, 660 (D.Del. 2008).  The ALJ still had an obligation to properly consider that opinion.  *Id.* at 660-664.

The opinion of a treating physician does not inevitably control the determination as to whether a claimant is disabled.  *Brown v. Astrue*, 649 F.3d 193, 196, n. 2 (3d Cir. 2011).  In order to reject a treating physician's opinion, however, the Commissioner must rely on countervailing medical evidence.  *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008).  He cannot rely solely on the lay opinion of an administrative law judge.  *Morales v. Apfel*, 225 F.3d 310, 317-318 (3d Cir. 2000).  In this case, no physician other than Dr. Urrea provided an assessment of Jones' mental limitations.  Dr. Wyszomierski's opinion related only to Jones' *physical* limitations.  R. 220-226.  Since the ALJ did not base his assessment of Jones' mental abilities on medical evidence, his decision is not supported by substantial evidence.  *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986).

Treatment records provided by Dr. LaCava, Dr. Barsouk and Colosimo suggest that Jones' seizures were caused or exacerbated by stress. R. 207, 235, 250. Jones testified that stressful situations would cause her to suffer petit mal seizures and migraine headaches. R. 34. Recognizing stress as a "triggering factor" for Jones' "absence seizures," the ALJ stated in his decision that Jones could perform only work that was "low stress in nature." R. 18. Nevertheless, his residual functional capacity finding (and corresponding hypothetical question to Ganoe) contained no language limiting Jones to "low stress" work. R. 15, 51-52. The Commissioner argues that the ALJ accounted for this limitation by specifying that Jones could not perform "fast production rate pace work." ECF No. 8 at 12, R. 15, 52. This argument is unavailing. While it may be true that "fast production rate pace work" may increase an employee's stress level, it does not follow that work settings falling outside of that category are necessarily stress-free. Since the ALJ acknowledged in his decision that Jones could not work in a stress-producing environment, he was required to convey that limitation with a greater degree of specificity than that reflected in his hypothetical question to Ganoe. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004).

The Commissioner intimates that since Ganoe was present for the entire hearing and listened to Jones' testimony, he must have understood that she was precluded from working in a stressful environment. ECF No. 8 at 12. This inference, however, cannot reasonably be gleaned from the testimonial evidence. Jones testified that work-related stress had caused her to leave her prior positions.[10] R. 34-36. She specifically stated that she had been forced to leave her job as a pharmacy technician because of petit mal seizures and migraine headaches caused by work-related stress. R. 34-35. In response to the ALJ's hypothetical question, Ganoe testified that an

---

[10] Jones also testified that her medical condition had forced her to withdraw from nursing school on two separate occasions. R. 36, 40.

individual with the described limitations could perform the duties of the same positions that Jones had allegedly been forced to leave. R. 51-52. That is why the ALJ determined, at the fourth step of the sequential evaluation process, that Jones could return to her past relevant work. R. 19. Under these circumstances, it cannot be assumed that Ganoe was aware of Jones' need to avoid stressful work environments.[11] *Burns v. Barnhart*, 312 F.3d 113, 122-124 (3d Cir. 2002).

It remains to be determined whether Jones should be awarded benefits at this time, or whether the appropriate remedy is a remand for further consideration of her application. An immediate award of benefits is warranted only where "the evidentiary record has been fully developed," and where "the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010). That standard is not satisfied in this case. The only assessment of Jones' physical restrictions contained in the record is the one provided by Dr. Wyszomierski, who never treated or examined Jones. R. 220-226. Dr. Urrea's assessment of Jones' mental limitations was based solely on two examinations. R. 53, 245-248. On August 27, 2009, Colosimo indicated that Jones was *not* disabled. R. 235. These factors militate against a judicially-ordered award of benefits.

---

[11] The Commissioner points out that Jones had the burden of proof at the fourth step of the sequential evaluation process. ECF No. 8 at 11-12; *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). The step at which Jones' application was denied, however, is of no dispositive significance under these circumstances. The ALJ's assessment of Jones' residual functional capacity was *itself* deficient. *Rutherford v. Barnhart*, 399 F.3d 546, 554, n. 8 (3d Cir. 2005). A claimant's residual functional capacity is only assessed once. *Her v. Commissioner of Social Security*, 203 F.3d 388, 391-392 (6th Cir. 1999). The *same* residual functional capacity assessment is used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1545(a)(5)(i)-(ii). The Commissioner's evidentiary burden at the fifth step of the process relates solely to the existence of jobs in the national economy that are not precluded by a claimant's previously-established residual functional capacity. *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). It has nothing to do with the degree or severity of the claimant's limitations. *Her*, 203 F.3d at 391. Consequently, the differences between the fourth and fifth steps have no bearing on the supportability of the ALJ's residual functional capacity finding.

For the foregoing reasons, further development of the record is required before a determination can be made as to whether Jones is "disabled" within the meaning of the Act. Even if the stress associated with Jones' prior positions would preclude her from returning to her past relevant work, she may be able to perform the duties of other jobs existing in the national economy. Jones testified that she could not handle the stress of *any* job, and that a rule requiring her to appear for work at a specific time would be enough to exacerbate her medical condition. R. 36. Although a claimant's testimony must be given serious consideration, the Commissioner is not necessarily required to credit it in every respect. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 363 (3d Cir. 2011). In this vein, the present state of the record does not automatically compel the conclusion that Jones is entitled to benefits.

Jones must be afforded "an opportunity to be heard" on remand. *Thomas v. Commissioner of Social Security*, 625 F.3d 798, 801 (3d Cir. 2010). The Commissioner is free to order any consultative physical and mental examinations that may be necessary to facilitate the proper resolution of Jones' claim. 20 C.F.R. §§ 404.1517-404.1519t. In determining whether Jones is *per se* disabled under Listings 11.02 and 11.03, the Commissioner should carefully consider the information provided by Dr. Barsouk. R. 239. Additional evidence submitted by Jones must also be given appropriate consideration.

## VIII.   CONCLUSION

The motion for summary judgment filed by the Commissioner (*ECF No. 7*) will be denied, and the motion for summary judgment filed by Jones (*ECF No. 5*) will be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's final decision, and a remand for further proceedings. The Commissioner's

decision will be vacated, and the case will be remanded to him for further consideration of Jones'

application for disability insurance benefits.  Appropriate orders will follow.


Date:  August 30 , 2012


                                                    s/ David Stewart Cecone
                                                    David Stewart Cercone
                                                    United States District Judge

cc:     All counsel of record